IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ABIZAHI GUARDUNO-RIVERA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 119-148 |
| | ) | (Formerly CR 116-034) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

Petitioner Abizahi Guarduno-Rivera filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** Petitioner's Motion to Strike be **DENIED**, (doc. no. 4), the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Indictment

On June 7, 2016, the grand jury in the Southern District of Georgia charged Petitioner and his girlfriend, Krystal Angel Arechiga, in a four-count indictment. United States v. Guarduno-Rivera, CR 116-034, doc. no. 1 (S.D. Ga. June 7, 2016) (hereinafter "CR 116-034"). Counts One and Two charged Petitioner and Ms. Arechiga with (1) conspiracy to distribute and possess with intent to distribute controlled substances and (2) possession with intent to distribute a schedule II-controlled substance, respectively. Id. Count Four charged

Petitioner with illegal reentry by a deported alien.  Id. at 3.  On June 22, 2016, Petitioner plead not guilty to all counts pending against him.  Id., doc. no. 10.  After the Court initially appointed attorney Danny L. Durham, Petitioner retained Travers W. Chance.  Id., doc. nos. 16, 20.

**B.    Agreement to Plead Guilty**

Pursuant to a written plea agreement, Petitioner appeared with counsel and pled guilty on September 15, 2016, to Counts One and Four.  Id., doc. nos. 36, 38-39.  In exchange, the government agreed to dismiss the remaining counts, not object to a recommendation for a two-point acceptance of responsibility reduction, and move for an additional one-point reduction for acceptance of responsibility.  Id., doc. no. 39-1, pp. 4-6.  Further, the parties stipulated "for purposes of Section 2D1.1 of the Sentencing Guidelines, the offense involved at least 1.5 kilograms of methamphetamine (actual) but fewer than 4.5 kilograms of methamphetamine (actual)."  Id. at 5.

Petitioner's plea agreement contained the following factual basis for his guilty plea:

> [B]eginning on or before November 2015 . . . and continuing until at least January 29, 2016, in Richmond and Columbia Counties, in the Southern District of Georgia, and in the Northern District of Georgia, the defendant did knowingly and intentionally combine, conspire, confederate, and agree together with others known and unknown, to commit certain offenses against the United States, that is, to possess with intent to distribute methamphetamine, a Schedule II controlled substance . . . .  [O]n or about the 29th day of January 2016, in Columbia County, in the Southern District of Georgia, the defendant, an alien, who had previously been deported on May 20, 2006 at the McAllen, Texas Port of Entry, and again on January 29, 2015, from the Brownsville, Texas Port of Entry, was found in Columbia County, Georgia, within the United States, without first obtaining the express consent of the Attorney General to reapply for admission to the United States . . . .

Id. at 2-3.

The plea agreement contained a broad appeal waiver provision that stated in relevant part:

> Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground. The only exceptions to this waiver are that the Defendant may file a direct appeal of his sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence. Absent those exceptions, Defendant explicitly and irrevocably instructs his attorney not to file an appeal.

Id. at 6-7.  By signing the plea agreement, Petitioner attested he read, understood, and voluntarily agreed to the plea agreement.  Id. at 14.

At the change of plea hearing, held jointly for Petitioner and Ms. Arechiga, Chief United States District Judge J. Randal Hall started by confirming Petitioner had agreed to plead guilty to conspiracy and illegal entry by a deported alien, and Ms. Arechiga had agreed to plead guilty to the conspiracy charge only.  Id., doc. no. 62 ("Rule 11 Tr."), p. 6.

Judge Hall confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court.  Id. at 6, 10. Judge Hall reviewed all three charges against Petitioner in the indictment and confirmed Petitioner intended to plead to Counts One and Four.  Id. at 12.  Petitioner confirmed he had as much time as he needed to speak with Mr. Chance about the charges.  Id. at 13.  Petitioner also testified under oath he was satisfied with the assistance he had received from Mr. Chance, had read and reviewed the Plea Agreement with counsel before signing it, and understood everything in the Plea Agreement.  Id. at 12-13, 16.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights.  Id. at 13-16.  Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the

government's burden to prove guilt beyond a reasonable doubt, the right to be present and cross-examine witnesses, and the right to remain silent.  Id.  Judge Hall also specifically reviewed the appeal waiver provision of the Plea Agreement.  Id. at 17.  Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea.  Id. at 18.  Additionally, Judge Hall reviewed the potential for a twenty-year term of imprisonment on Count One and a ten-year term of imprisonment on Count Four.  Id. at 19.  When asked, Petitioner confirmed he understood the maximum penalties, as well as the potential $1,250,000 total fine and three years of supervised release.  Id.

Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report (PSI), and Petitioner's sentence would be based on the information in the PSI.  Id. at 21-22.  Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range.  Id. at 23.  Petitioner stated he understood the sentencing process described by Judge Hall and no one had promised him he would receive a particular sentence.  Id.  Judge Hall next reviewed the elements of the offenses the government would have to prove at trial to obtain convictions on the charges to which Petitioner was pleading guilty, and the government called Investigator Richard Cowell with the Richmond County Sheriff's Department, and Special Agent Peter Amodeo with Homeland Security Investigations, to provide the factual basis.  Id. at 23-25, 29.

Inv. Cowell testified that on January 29, 2016, at approximately 8:30 a.m., Inv. Brad Capitosi received information from a confidential and reliable source that Petitioner and his girlfriend, Ms. Arechiga, were traveling to Atlanta to pick up methamphetamine.  Id. at 26.

At approximately 3:00 p.m., Inv. Cowell and other officers observed Petitioner and Ms. Arechiga traveling eastbound on I-20.  Id.  Shortly after, Petitioner and Ms. Arechiga were detained at 504 Simoni Place in Grovetown, Georgia.  Id. at 27.  Deputy Steven Jones with the Richmond County Sheriff's Department K-9 division conducted an open-air sniff of the vehicle with his K-9, who alerted to the presence of drugs in the vehicle.  Id.  Investigators Concepcion and Capitosi searched the vehicle and located two zip lock bags of methamphetamine inside a dog biscuit box.  Id.  Afterwards, Ms. Arechiga was Mirandized and consented to a search of her residence in Augusta Estates Mobile Park.  Id.  Ms. Arechiga told investigators she and Petitioner traveled to Atlanta approximately ten times to purchase meth, at least two kilos at a time.  Id. at 28.

Agent Amodeo testified a fingerprint comparison from Petitioner's arrest on January 29th confirmed he was deported on May 20, 2006 and January 29, 2015, without permission of reentry.  Id. at 30-31.  Petitioner had no disagreement, admitted the conduct described, and confirmed his desire to plead guilty to Counts One and Four.  Id. at 32.

Judge Hall then summarized the proceedings as follows:

> Now that each plea has been signed by the respective defendant and entered into the record of this hearing, this Court finds that each defendant is competent . . . fully understand[s] the charge or charges against him or her as applicable.
>
> There is an independent factual basis for their pleas of guilty containing each of the essential elements of the offenses. Each defendant knows the statutory punishment that could be imposed on the charges, and each knows his or her jury rights and has knowingly and voluntarily waived those rights.
>
> I further find that each defendant's decision to plead guilty this afternoon was voluntary, knowing, and not the result of any force, pressure, threats, or promises other than the promises made by the Government in the plea agreement. Therefore, the pleas are accepted.

I hereby adjudge Mr. Guarduno-Rivera guilty of Count -- the lesser-included offense of Count One and Count Four of the indictment based on his plea of guilty.

Id. at 33.

**C.    Sentencing**

The PSI set Petitioner's base offense level for Count One at thirty-six, pursuant to U.S.S.G. § 2D1.1(c)(2), and Petitioner's base offense level for Count Four at eight, pursuant to U.S.S.G. § 2L1.2(a).  PSI ¶¶ 34, 40.  Petitioner's offense level for Count One increased to thirty-eight after an enhancement for being an organizer, leader, manager, or supervisor in criminal activity, pursuant to U.S.S.G. § 3B1.1(c).  PSI ¶ 37.  Petitioner's offense level for Count Three increased to twenty-two after enhancements for:  (1) committing the instant offense after sustaining a conviction for a felony that is an illegal reentry offense; and (2) having sustained a conviction for a felony offense other than an illegal reentry offense for which the sentence imposed was five years or more.  PSI ¶¶ 41, 42.  Because the adjusted offense level from Count One resulted in the higher offense level, Petitioner's combined adjusted offense level was thirty-eight.  PSI ¶ 50.  This offense level decreased three points for acceptance of responsibility resulting in a total offense level of thirty-five.  PSI ¶¶ 52-53.

Petitioner received six criminal history points for adult criminal convictions pursuant to U.S.S.G. § 4A1.1(a):  (1) a 2002 felony conviction for trafficking in cocaine; and (2) a 2014 felony conviction for unlawful reentry subsequent to an aggravated felony conviction.  PSI ¶¶ 56, 57.  Petitioner received two additional points for committing the instant offense while under a criminal justice sentence.  PSI ¶ 59.  Accordingly, Petitioner's criminal history score of eight established a criminal history category of IV.  PSI ¶ 60.  Based on a total

offense level of thirty-five and a criminal history category of IV, Petitioner's guideline imprisonment range was 235 to 293 months.  PSI ¶ 87.

Petitioner objected to the two-point enhancement for being an organizer, leader, manager, or supervisor of criminal activity.  PSI Add.  At sentencing, Mr. Chance argued Petitioner was not in a supervisory role because of his romantic relationship with his co-defendant Ms. Arechiga.  CR 116-034, doc. no. 63, (Sent. Tr.), pp. 6-9.  Upon consideration of Petitioner's objection, the undisputed facts in the PSI, and the testimony obtained from Ms. Arechiga as to Petitioner's role in the conspiracy and their relationship, Judge Hall overruled the objections and adopted the PSI's factual statement and application of the Guidelines.  Id. at 17-18.

Mr. Chance requested Judge Hall consider a downward departure from the Guidelines range based on Petitioner's acceptance of responsibility, the advanced age of his parents in Mexico, and a non-violent criminal history.  Id. at 19-21.  Petitioner reiterated these facts and spoke about his nine children.  Id. at 21.  Petitioner also apologized for his criminal actions. Id. at 22.  Judge Hall sentenced Petitioner to 288 months of imprisonment, with 240 months on Count One to be served consecutively with forty-eight months on Count Four.  Id. at 26. Judge Hall cited the drug quantity attributed to Petitioner, Petitioner's repeated illegal reentry into the United States, and Petitioner's ongoing threat to the community.  Id.  Petitioner did not file an appeal.

### D.    § 2255 Proceedings

On March 12, 2018, Petitioner filed a § 2255 motion to vacate, set aside, or correct his sentence, raising three ineffective assistance of counsel claims, including a claim Mr. Chance failed to file an appeal.  Id., doc. no. 60.  On August 30, 2018, the Court granted

Petitioner's § 2255 motion as to the out-of-time appeal and dismissed without prejudice all other claims raised in the § 2255 motion.  Id., doc. no. 82.  On February 26, 2019, the Eleventh Circuit affirmed Petitioner's conviction and sentence.  Id., doc. no. 96.

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

(1)     Counsel provided ineffective assistance by failing to adequately investigate Ms. Arechiga's statement the methamphetamine found in her car and home belonged to her and not Petitioner, and by failing to seek dismissal of Count One on this factual basis;

(2)     Counsel provided ineffective assistance of counsel by promising a sentence not exceeding twenty years of imprisonment without explaining the sentencing guidelines or that the sentences on each count could run consecutively;

(3)     The government violated Brady v. Maryland by failing to produce Ms. Arechiga's original interview statement that the methamphetamine belonged to her, and by coercing her to change her statement to allege it belonged to Petitioner, by threatening to take her children out of her custody.

(See generally doc. nos. 1, 1-1.)

## II.     DISCUSSION

### A.     Petitioner's Motion to Strike Should be Denied

In his Motion to Strike, Petitioner moves the Court to strike the affidavits of attorneys Mr. Chance and Grady Blanchard filed in support of the government's response to Petitioner's § 2255 motion.  (Doc. no. 4; see doc. nos. 3-1, 3-2.)  Petitioner argues the affidavits contain lies and were made in reckless disregard of the truth.  (Doc. no. 4.)  Under Rule 12(f), a motion to strike may only address pleadings.  Fed. R. Civ. P. 12(f).  The affidavits Plaintiff seeks to strike are not contained within the pleadings.  See Infinity Gen. Ins. Co. v. Graham, No. 2:07-CV-83-WCO, 2008 WL 11334396, at *2 (N.D. Ga. Aug. 8,

2008) (denying Plaintiff's motion to strike affidavits because only material in "pleading" may be subject of motion to strike); Lowery v. Hoffman, 188 F.R.D. 651, 653 (M.D. Ala. 1999) ("Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike.").  Furthermore, the Court does not rely on these affidavits in its below analysis of Petitioner's claims.  Therefore, Petitioner's motion to strike should be denied. (Doc. no. 4.)

### B.     No Evidentiary Hearing Required

Petitioner asks for an evidentiary hearing.  (Doc. no. 1-1, pp. 6, 11.)  Section 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.  Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).  Because Petitioner's claims lack merit as

a matter of law, or are otherwise barred from review in these proceedings, no evidentiary hearing is necessary, and Petitioner's request for one should be denied.

### C.   Petitioner's Heavy Burden Under <u>Strickland v. Washington</u> To Establish Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003); <u>United States v. Armstrong</u>, 546 F. App'x 936, 940 (11th Cir. 2013).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses. <u>Id.</u> at 1317.  Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." <u>Puiatti v. Sec'y, Fla. Dep't of Corr.</u>, 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting <u>Foster v. Dugger</u>, 823 F.2d 402, 405 (11th Cir. 1987)).  Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do

with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).  The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time."  Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal

quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, in addition to showing counsel's representation fell below an objective standard of reasonableness, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); Lee v. United States, ─── U.S. ───, 137 S. Ct. 1958, 1965, 198 L.Ed.2d 476 (June 23, 2017); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012).  In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas."  Hill, 474 U.S. at 58.  Where the attorney error allegedly affects the prospects of success at trial, a defendant who pled guilty must also show "he would have been better off going to trial."  Lee, 137 S. Ct. at 1965.

The impact of a guilty plea on the deficiency analysis is substantial both with respect to the scope and nature of the inquiry.  As to scope, the Supreme Court explained as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson, 397 U.S. 759 (1970)].
>
> . . . [I]t is not sufficient for the criminal defendant seeking to set aside such a [guilty] plea to show that his counsel in retrospect may not have correctly apprised the constitutional significance of certain historical facts. . . .

> . . . Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, or by contesting all guilt.  A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement . . . might be factually supported.

Tollett v. Henderson, 411 U.S. 258, 267-68 (1973).

As to the nature of the inquiry, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . . ." Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991) (en banc) (quoting Wofford v Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984)).  When a client pleads guilty, defense counsel "need only provide [her] client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Id.; see also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (per curiam).  Counsel can impart such an understanding by offering her informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue.  Wofford, 748 F.2d at 1508.

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses.  Chandler, 218 F.3d at 1317.  Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)).  As has been long-settled, "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." McMann, 397 U.S. at 770.

### D.    Petitioner is Not Entitled to Relief on His Ground One and Two Claims

Ground One alleges Mr. Chance was ineffective because he failed to investigate adequately Ms. Arechiga's statement the methamphetamine found in her car and home

belonged to her, and he failed to move for dismissal of the Count One conspiracy charge on this basis.  (Doc. no. 1, p. 4; doc. no. 1-1, pp. 4-5.)  Ground Two alleges Mr. Chance promised Petitioner's sentence would not exceed twenty years and failed to explain his sentencing exposure under the Sentencing Guidelines, which renders Petitioner's guilty plea unknowing and involuntary.  (Doc. no. 1, p. 5; doc. no. 1-1, pp. 7-9.)  As discussed below, Grounds One and Two are barred by Petitioner's guilty plea and also fail on the merits.

### 1.  Petitioner's Guilty Plea Was Knowing, Voluntary, and Binding

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea."  Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Hall reviewed all the charges raised against Petitioner in the indictment, specifically informed Petitioner in clear terms of the charges to which he was pleading guilty, and reviewed the elements of the offenses the government would have to prove to obtain a conviction.   Rule 11 Tr. 12, 23-24.   Petitioner testified he understood this information.  Id. at 12, 24.  Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  Id. at 13-16.  Petitioner testified that other than the promises the government made in the Plea Agreement, no one made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement.  Id. at 6, 23.

Additionally, Judge Hall informed Petitioner of the maximum penalties for Counts One and Count Four.  Id. at 19.  Finally, Petitioner also testified he had enough time to discuss the case with Mr. Chance and was satisfied with his services.  Id. at 13; see also Plea

Agreement, p. 10 ("I have read and carefully reviewed this agreement with my attorney."). Thus, Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charges and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner's guilty plea was thus knowing and voluntary and, as explained below, nothing alleged in Grounds One and Two is sufficient to overcome Petitioner's guilty plea. See Dominguez Benitez, 542 U.S. at 83.

> **2. Ground One Fails Because Mr. Chance's Alleged Failure to Investigate Ms. Arechiga's Statements Concerning the Methamphetamine Is Neither Constitutionally Deficient Nor Prejudicial**

In Ground One, Petitioner asserts Mr. Chance provided ineffective assistance by failing to adequately investigate and move for dismissal of Count One on the basis that the methamphetamine found in co-defendant Ms. Arechiga's car and home belonged to her and not Petitioner. (Doc. no. 1, p. 4; doc. no. 1-1, pp. 4-5.) Any decision by Mr. Chance to not investigate Ms. Arechiga's statement further is neither deficient nor prejudicial because whether the methamphetamine belonged to Petitioner or Ms. Arechiga is entirely irrelevant to the conspiracy charge for which he pled guilty. The elements of a conspiracy charge under 21 U.S.C. § 846 are (1) two or more persons agreed to commit a drug-related offense; (2) the defendant knew of the conspiracy; and (3) the defendant agreed to become a member. United States v. Louis, 861 F.3d 1330, 1333 (11th Cir. 2017). As detailed in §II.D.1 supra, Petitioner stipulated and agreed to a factual basis that satisfied all three of these elements. Failure to investigate a fact that has no bearing on the charge is objectively reasonable rather than constitutionally deficient and prejudicial. See, e.g. Callahan v. Campbell, 427 F.3d 897, 933 (11th Cir. 2005) (citing Strickland, 466 U.S. at 690-91) (recognizing "counsel need not always investigate before pursuing or not pursuing a line of defense"). Furthermore,

Petitioner admits Mr. Chance was aware of Ms. Arechiga's statement the methamphetamine belonged to her and made a point of highlighting this statement as a mitigating factor at the sentencing hearing.  (Doc. no. 1, p. 4.)

While Petitioner never states as much, the Court will address any lingering implication of Petitioner now disavowing his participation in the conspiracy.  Any such disavowal is contradicted by the Plea Agreement, record of the Rule 11 hearing, and Petitioner's sworn testimony at that proceeding.  Petitioner's Ground One allegation also flies in the face of his unequivocal statement to Judge Hall at the Rule 11 hearing that he was entirely satisfied with Mr. Chance's preparation and handling of the case.  Rule 11 Tr. 13. "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

Finally, Petitioner is mistaken in his belief he could have convinced the Court to dismiss Count One if Mr. Chance had only investigated further Ms. Arechiga's statement the methamphetamine belonged to her.  (Doc. no. 1-1, p. 5.)  The issue does not touch on the elements of the conspiracy charge, the indictment adequately alleged the elements of such a charge, and the Federal Rules of Criminal Procedure do not authorize a dismissal motion predicated on an alleged insufficiency of evidence.  United States v. Baxter, 579 F. App'x 703, 706 (11th Cir. 2014); United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004);

United States v. Joyner, No. 108CR14-SPM, 2009 WL 1286211, at *2 (N.D. Fla. May 6, 2009).

For all of these reasons, Ground One fails to allege constitutionally deficient and prejudicial representation that would justify rescission of Petitioner's knowing and voluntary guilty plea.  See United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings.").

### 3.   Ground Two Fails Because Petitioner's Allegations Fly in the Face of Petitioner's Sworn Statements at the Change of Plea Hearing

Petitioner asserts in Ground Two Mr. Chance provided ineffective assistance by failing to explain the sentencing guidelines, including that his sentence on each count of conviction could run consecutively, and promising at first a ten-year prison sentence then later a fifteen-year prison sentence.  (Doc. no. 1, p. 5; doc. no. 1-1, pp. 7-9.)  Without these assurances, Petitioner claims he would not have pled guilty.  (Doc. no. 1, p. 5.)

At the change of plea hearing, Judge Hall asked Petitioner under oath whether anyone had promised or predicted a specific sentence.  Rule 11 Tr. 23.  Petitioner responded, "No, sir."  Id.  Petitioner will not now be heard to contradict his prior sworn testimony to Judge Hall.  Blackledge, 431 U.S. at 74; Rogers, 848 F.2d at 168; Stitzer, 785 F.2d at 1514 n.4. The record also confirms Judge Hall informed Petitioner of the potential for a twenty-year term of imprisonment for conviction on Count One and a ten-year term of imprisonment on Count Four.  Rule 11 Tr. 19.  Petitioner testified he understood the statutory penalties and that other than the promises the government made in the Plea Agreement, no one made promises to get him to plead guilty.  Id. at 18-19.  Judge Hall also confirmed Petitioner's

decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement.  Id. at 6.

So long as the Rule 11 court correctly advises a defendant of the minimum and maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging counsel gave erroneous advice about the sentence he might receive or the possibility for enhancements under the Guidelines.  See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (per curiam) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court, which explained "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea"); see also United States v. Herrington, 350 F. App'x 363, 369 (11th Cir. 2009) (per curiam) (affirming district court refusal to allow withdrawal of guilty plea where court at plea hearing set forth maximum penalties and explained court not bound by counsel's sentencing estimates).

For all of these reasons, Petitioner cannot satisfy the two prongs of Strickland, and Ground Two forms no basis for relief.

### E.    Petitioner's Ground Three **Brady** Claim is Procedurally Defaulted and Meritless

In Ground Three, Petitioner claims the government withheld exculpatory evidence in violation of Brady.  (Doc. no. 1, p. 6.)  Petitioner contends Ms. Arechiga initially told investigators the methamphetamine in her house and car belonged to her but later claimed it belonged to Petitioner because investigators threatened "to make her an unfit parent and take her kids from her."  (Doc. no. 1-1, p. 10.)  At first glance, one might misconstrue the petition as accusing the prosecutor of withholding Ms. Arechiga's exculpatory statement that she, not Petitioner, owned the methamphetamine.  However, Ground One states Mr. Chance brought

this same exculpatory statement "to the attention of the court" at the sentencing hearing. (Doc. no. 1, p. 4.) Delving further, one understands Petitioner has no knowledge of any Brady violation, but instead believes there is evidence of the investigator's alleged threat to Ms. Arechiga in the investigators' files. Indeed, Ground Three states as follows: "Petitioner cannot be sure, but he believes due to sound judgment, [the prosecutor] has in her possession a copy of the investigatiries [sic] coercing Ms. Arechiga to lie and blame the drugs on Petitioner . . . ." (Id. at 6.)

The government denies any such wrongdoing, stating it produced in discovery all information concerning Ms. Arechiga's statements including DEA reports summarizing Ms. Arechiga's statements on January 29, 2016 and February 2, 2016. (Doc. no. 3, p. 23.) In addition, investigators testified concerning the substance of Ms. Arechiga's statements both at the Rule 11 hearing and the sentencing hearing. Petitioner's Brady claim is barred by his failure to raise it on direct appeal and devoid of merit.

Petitioner's claim is barred because he never raised this claim on direct appeal when he objected to the Anders brief of appointed counsel in a *pro se* filing specifying two unrelated bases for appeal. United States v. Guarduno-Rivera, 754 F. App'x 945 (11th Cir. 2019). A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual

development." Mills, 36 F.3d at 1055.  In other words, Petitioner may not use this collateral

attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th

Cir. 2004) (citation omitted).

For the Court to review a claim otherwise barred in collateral proceedings, Petitioner

must show both cause and actual prejudice from the error of which he complains.  Brown,

720 F.3d at 1333; Montano, 398 F.3d at 1280.  "Cause" requires a showing of some external

impediment that prevented a claim from previously being raised.  See Weeks v. Jones, 52

F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  To

demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the

errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his

*actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of

constitutional dimensions." Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by
> the failure to appeal if he could [sic] show a fundamental miscarriage of
> justice; "in an extraordinary case, where a constitutional violation has
> probably resulted in the conviction of one who is actually innocent, a federal
> habeas court may grant the writ even in the absence of a showing of cause for
> the procedural default."

Montano, 398 F.3d at 1280 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  Actual

innocence "applies to a severely confined category:  cases in which new reliable evidence

shows it is more likely than not that no reasonable juror would have convicted [the

petitioner]." McQuiggin v. Perkins, 569 U.S. -, 133 S. Ct. 1924, 1933 (2013) (internal

quotations omitted) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see also McKay v.

United States, 657 F.3d 1190, 1196 (11th Cir. 2011).

Petitioner has not established cause and prejudice.  He cites no external impediment

that prevented him from raising the alleged Brady violation on direct appeal, and he can

establish no prejudice from being unable to obtain documents he merely speculates may exist.

Even if Petitioner's Ground Three claim were not procedurally barred, which it is, the claim also fails on the merits. Nondisclosure by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87 (1963). There are four elements Petitioner must show to establish a Brady violation:

> (1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

United States v. Vallejo, 297 F.3d 1154, 1164 (11th Cir. 2002) (citing United States v. Meros, 866 F.2d 1304, 1308 (11th Cir. 1989)). Petitioner cannot establish any of these elements because he merely speculates there are documents in the investigators' files showing they threatened Ms. Arechiga, thereby coercing her to claim the methamphetamine belonged to Petitioner. (Doc. no. 1, p. 6; doc. no. 1-1, pp. 5-6, 10-11.) Petitioner cites no basis for his speculation, let alone any evidence suggesting these documents exist. Nor is there a reasonable probability of a different outcome in light of Petitioner's admission that he conspired with Ms. Arechiga to distribute methamphetamine, and the irrelevance of who actually possessed or owned the methamphetamine to the elements of a conspiracy charge under 21 U.S.C. § 846.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Petitioner's motion to strike be **DENIED**, (doc. no. 4), the § 2255 motion be **DENIED**

without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 28th day of April, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA